UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>   Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL T. RAND, )<br>   Defendant. )<br>) | CASE NO. 3:10-CR-182 |

**DEFENDANT'S OBJECTIONS TO MAGISTRATE'S ORDER
DENYING HIS MOTION FOR TRANSFER OF VENUE**

The balance of convenience overwhelmingly favors transferring venue to Atlanta. Most of the actions that give rise to this case took place in Atlanta. Mr. Rand and his family live in Atlanta. Beazer's corporate headquarters and "nerve center" is in Atlanta. And a ten-week trial in Charlotte would pose a tremendous burden on dozens of witnesses who reside in Atlanta. Indeed, the Magistrate Judge's Order *does not dispute* that the balance of convenience overwhelmingly favors transfer.[1] Instead, the Order denies Mr. Rand's motion based solely on a conclusion that the motion is untimely and that Mr. Rand "identifies no relevant changed circumstances" since his arraignment.[2]

---

[1] See Order of July 29, 2011, denying Defendant's Motion for Transfer of Venue ("Order"), Docket No. 59.
[2] Id. at 3.

The denial of Mr. Rand's motion to transfer is clearly erroneous and contrary to law for the following three reasons:

(1) This trial could last ten weeks. (The Government reaffirmed in its briefing its stated need for five weeks for its case alone). But the Government only just provided witness statements for the 75+ witnesses it has interviewed, and the majority of these witnesses have greater ties to the Atlanta area than to Charlotte. Nothing in these statements suggests this case has greater ties to Charlotte than Atlanta. In fact, they suggest the opposite and confirm that Atlanta, not Charlotte, is the factual center of this case. The Government's production of these statements comes recently as part of open-file discovery, within just a few weeks before the instant transfer motion.

(2) Neither the Government nor the Order responds *at all* to a special factor identified in Mr. Rand's opening brief: two members of his defense team are expecting newborns within two months of trial, including one child expected to be born during the trial (and given the possible length of trial, including a reasonable chance the second child will be too). Obviously, the timing of these births is neither strategic nor planned.

(3) The Government has no real response to Mr. Rand's showing that the balance of convenience overwhelmingly favors transferring venue to Atlanta. Rather, the Government distracts from the core issue—the evaluation of these factors—by attacking the timing of Mr. Rand's briefing. The timing of the briefing is due in large part to the two factors listed above. And, as explained, the Magistrate Judge's Order does not dispute that the balance of convenience overwhelmingly favors transfer.

Pursuant to Federal Rule of Criminal Procedure 59, Mr. Rand therefore asks this Court to sustain his objections to the Magistrate's Order and to transfer this case to the Northern District of Georgia, Atlanta Division.

## ARGUMENT

### I. Mr. Rand's Motion for Transfer of Venue is Timely

Rule 21(b) provides that "[a] motion to transfer may be made at or before arraignment or at any other time the court or these rules prescribe." Fed. R. Crim. P. 21(b) (emphasis added). This Court also has discretion to extend the time period in which a transfer motion is allowed. See Fed. R. Crim. P. 45(b)(1); see also United States v. Brooks, No. 08-cr-35, 2008 WL 2944626, at *1 (S.D.N.Y. July 31, 2008) (motion to transfer was procedurally sound even though it was filed *after* the court declared a mistrial).

The Order concludes that Mr. Rand filed an untimely motion and that Mr. Rand "identifies no relevant changed circumstances" since his arraignment. Order at 3. In his opening brief, however, Mr. Rand identified at least two changed circumstances since the arraignment. First, the Government has agreed to open-file discovery, producing *for the first time* in the last few weeks the more than 75 statements from the witnesses it has interviewed in this case. Although the Government had previously identified by name 40 relevant witnesses (see Doc. 50-1, Ex. A), it only recently produced their statements, together with the statements of more than 30 additional witnesses. Nothing in these statements suggests this case has greater ties to Charlotte than Atlanta. *None* of the 40 witnesses first identified by the Government are from Charlotte, and a plurality of the 75

3

witnesses are from Atlanta. The Government has intimated that its case will be built on these 75 witnesses. *See* Government's Response to Defendant's Objections to Denial of Motion for Bill of Particulars, Docket No. 62, at 2. (arguing that "Defendant could not have a better roadmap to preparing his defense" that these witnesses' statements). Given the Government's representation that this trial will go on for weeks—and that relatively few of these witnesses live in Charlotte—these witnesses will be directly prejudiced by trial in Charlotte rather than Atlanta.

Second, two members of Mr. Rand's defense team are expecting newborns within two months of trial, including one child expected to be born during the trial. Doc. 51 ("Br.") at 11. The second child is due December 14—if even only two weeks early, it too could be born during trial. Obviously, defense counsel did not receive the good news eleven months ago. Transferring this case to Atlanta will help these attorneys balance the demands of family life and trial. In a similar context, one federal court recently emphasized the importance of this balancing. The court stated:

> Given the proposed length of trial and the famous disregard that newborns (especially first-borns) have for such schedules, and given that the trial is scheduled in Kansas City while the new Erman's arrival is scheduled in Dallas, Defendants move this Court for a continuance. This in itself would not be remarkable, but in reviewing the motion the Court was more than somewhat surprised to read that "Plaintiffs have refused to agree to continue the trial setting and have indicated that they intend to oppose this Motion." . . . .

4

> [P]laintiffs argue that surely Mr. Erman will have sufficient time to make it from the Kansas City trial to the Dallas birth, even helpfully pointing out the number of daily, non-stop flights between the two cities; and in any event complain of the inconvenience of this late requested continuance. *Certainly this judge is convinced of the importance of federal court, but he has always tried not to confuse what he does with who he is, nor to distort the priorities of his day job with his life's role. Counsel are encouraged to order their priorities similarly.*
>
> Defendants' Motion is GRANTED. The Ermans are CONGRATULATED.

Jayhawk Capital Mgmt., LLC v. LSB Indus., Inc., No. 08-cv-02561 (D. Kan. Apr. 12, 2011) (emphasis added). Importantly, the Order does not even mention this special factor, let alone show why it does not deserve significant weight. See Order at 1-3.[3]

The Order relies on three cases in support of its conclusion that Mr. Rand's motion is untimely. But those cases, unlike this one, involve circumstances in which the defendant filed the motions *immediately* before trial and for no purpose except to cause delay. For example, in Shurin v. United States, the Fourth Circuit denied an untimely motion to transfer (filed six days before trial), but only because the motion was the product of intentional delay and "no reason for removal was given based upon anything that had occurred in the meantime." 164 F.2d 566, 570 (4th Cir. 1947); see also United States v. Espinoza, 641 F.2d 153 (4th Cir. 1981)

---

[3] The Government's response brief also fails to mention this special factor. See Gov't Br. at 13.

(defendant pursued transfer motion only 10 days before trial); Cagnina v. United States, 223 F.2d 149, 154 (5th Cir. 1955) (noting that the district court had "discretion" to deny an untimely transfer motion—not that the district court was required to do so).[4]

Here, by contrast, this Court has good cause for granting the motion to transfer due to the fact that the Government has only just produced its witness statements—statements reflecting that most witnesses have no connection to Charlotte—and because two of Mr. Rand's attorneys are now expecting newborns within two months of trial.[5] This happy news is just the sort of "relevant changed circumstances" that the Government accused Mr. Rand of failing to identify. See Doc. 52 ("Gov't Br.") at 1; see also United States v. McDonald, 740 F. Supp. 757, 765 (D. Alaska 1990) (granting transfer motion despite its filing close to trial).

The Government has asserted that the timing of Mr. Rand's motion to transfer is "particularly troubling," but the Government's reasons do not stand up to scrutiny. See Gov't Br. at 5. It is true that both parties have conducted months of pretrial work, but virtually all of that work could be utilized at a trial in Atlanta.

---

[4] In another case, which the Government cited but the Magistrate Judge did not rely upon, the transfer motion was filed two weeks *after* the trial started. See United States v. Taylor, 562 F.2d 1345 (2nd Cir. 1977).
[5] In addition to the two members of Mr. Rand's trial team who are expecting newborns, an attorney who plays a key supporting role on the defense team is expecting his first child at the end of August. This attorney's ability to assist the trial team would be greatly increased if the trial were in Atlanta.

6

The parties have argued pretrial motions based on the law in the Fourth Circuit, but several of those motions have been resolved and, in any event, none of them depends on a question over which the Fourth Circuit and the Eleventh Circuit are split. The Government also points out that "[s]cores of witnesses" have already been subpoenaed to appear in Charlotte, but this fact *supports Mr. Rand's motion for transfer* because Atlanta would be the more convenient forum for the vast majority of these witnesses.[6]

Mr. Rand's motion is timely and appropriate because it has only been in the last several weeks—during which time the Government has produced 302s for 75 witnesses and when the impact on family lives has become apparent—that the necessity for Mr. Rand's transfer motion has crystallized.

## II. Mr. Rand Has Met His Burden to Justify Transfer

The Order denies Mr. Rand's motion on procedural grounds—erroneously finding that the motion was untimely—but does not dispute the merits of Mr. Rand's motion. This Court should reach the merits of the motion to transfer and hold that Mr. Rand has met his burden of showing that "all relevant things

---

[6] The Government also argued there should be a "presumption" against transfer. Gov't Br. at 1-2. To the extent any such presumption exists, it would only become relevant "if consideration of the *Platt* factors leaves the Court in equipoise." United States v. Quinn, 401 F. Supp. 2d 80, 84 (D.D.C. 2005); see also 2 Charles Alan Wright & Peter J. Henning, Federal Practice and Procedure (4th ed. 2009) ("The beneficent purposes of Rule 21(b) will be thwarted . . . if it is supposed that there is a general rule that a criminal prosecution should be retained in the original district." (quotation marks omitted)).

7

considered, the case would be better off transferred to another district." In re Balsimo, 68 F.3d 185, 187 (7th Cir. 1995) (Posner, J.).

The Government's response mostly attacks a straw figure, pointing out that alleged victims (Wachovia and an unnamed individual) reside in Charlotte, that the Western District of North Carolina has *some* interest in the case, that *a few* witnesses live in Charlotte, and that the trial will be expensive regardless of its location. This response misses the point. Although a few unnamed witnesses live in Charlotte, see Gov't Br. at 10, the balance of convenience favors Atlanta because *dozens* of witnesses find their home in Atlanta. See United States v. Ferguson, 432 F. Supp. 2d 559, 562 (E.D. Va. 2006) ("Location of witnesses is one of the more significant factors in the decision to transfer venue under Rule 21(b)." (quotation marks omitted)). Although Charlotte, of course, has some connection to this case, the *relative convenience* of Atlanta over Charlotte compels a transfer of venue. As noted earlier, Mr. Rand and his family live in Atlanta, Beazer's corporate headquarters is in Atlanta, and most of the actions that give rise to this case took place in Atlanta.

The Government also complains that Mr. Rand has not specifically identified trial witnesses who live in Atlanta and why their testimony will be important. See Gov't Br. at 2, 9-10. This objection is odd because Mr. Rand finds support for his argument in the Government's own identification of witnesses, the

8

plurality of which, as noted, are from Atlanta. In any event, Mr. Rand specifies the following individuals who reside in metropolitan Atlanta and have already been identified by the Government as likely witnesses:

| **Name** | **Role** |
| --- | --- |
| Corbin Adams | Former Auditor at Deloitte & Touche |
| Cory Boydston | Former Treasurer of Beazer |
| Michael L. Brown | Attorney responsible for Beazer's Audit Committee investigation |
| Peggy Caldwell | Former Deputy General Counsel at Beazer |
| Deborah Danzig | Corporate Counsel at Beazer |
| Ginger Griffith | Former Beazer Director of Finance |
| Deborah Haertel | Corporate VP at Beazer |
| Kate Harris | Executive in charge of compensation at Beazer |
| David Herskovits | Partner at Deloitte & Touche |
| John L. Latham | Attorney responsible for Beazer's Audit Committee investigation |
| Allan P. Merrill | Current CFO of Beazer |
| Be Miller | Beazer Executive Assistant |
| Henry Niden | Auditor at Deloitte & Touche |
| Richard O'Connor | Former CAO at Beazer |
| Amy Portnell | Former Corporate Accounting Manager at Beazer |
| Robert L. Salomon | Current CAO of Beazer |
| John Skelton | Former Controller at Beazer |
| Stephen Theriot | Former Partner at Deloitte & Touche |
| W. Wayne Woody | Mr. Rand's supervisor at KPMG |

Since the Government itself has identified these individuals as potential witnesses in its case-in-chief, Mr. Rand "need not establish the materiality of these witnesses." Ferguson, 432 F. Supp. 2d at 564.

Mr. Rand has also identified a number of other Atlanta-area residents who are possible witnesses. The following persons from Atlanta were interviewed by

9

the FBI and/or named by the SEC as witnesses in the parallel civil enforcement action against Mr. Rand:

| Name | Role |
|---|---|
| Michael Berrigan | Audit Manager at Deloitte & Touche |
| Lauren Bingham | Former External Reporting Mgr. at Beazer |
| Mike Furlow | COO at Beazer |
| Ken Gary | Former General Counsel at Beazer |
| Elisabeth Goodwin | Former Sr. Manager at Deloitte & Touche |
| Cheney Hickey | Former SEC Reporting Manager at Beazer |
| Jeff Lund | Auditor at Deloitte & Touche |
| Them Luu | Former Se. Regional Finance Dir. at Beazer |
| John Maggard | Former VP Audit & Controls at Beazer |
| Kip Matas | Audit Sr. Manager at Deloitte & Touche |
| Ian McCarthy | Former CEO |
| David McManus | Former Accounting Manager at Beazer |
| Jan Nesmith | Former Land Controller at Beazer |
| Robert Norton | Former Staff Accountant at Beazer |
| Danny O'Keefe | Former Mgr., External Reporting, at Beazer |
| Michael Park | Audit and Controls Group at Beazer |
| Asli Reinsch | Former Dir. Treasury Operations at Beazer |
| Toni Rodd-Glover | Assistant to Beazer's CEO |
| Kim Stamaris | Corporate Accounting Manager at Beazer |
| Denise Stecovich | Former Assistant Controller at Beazer |
| David Weiss | Former CFO at Beazer |
| Cathy White | Senior Financial Analyst at Beazer |
| Rob Wojchiechowicz | Corporate VP Mortgage Acctg. at Beazer |

The Government cannot dispute that these lists include many, if not most, of the key witnesses in the case. This fact should come as no surprise since the Indictment is primarily based on actions allegedly taken in Atlanta, at Beazer's corporate headquarters. There are also other essential witnesses who live in

Atlanta. And Mr. Rand plans to call several character witnesses who reside in Atlanta, which tips the scales even further toward transfer. See Br. at 5-6.[7]

The Government argues that the convenience of the alleged victims favors trial in Charlotte, but has conceded that the alleged victims are spread nationwide. Gov't Br. at 7. The Government's only explanation for why venue is more convenient in Charlotte *relative to Atlanta* is that Wachovia Bank and "at least one" individual alleged victim are residents of Charlotte. Id. at 6-7. This is not a proper basis for comparison, however, because the Government omits any discussion of the alleged victims who live in Atlanta. Since Wachovia Bank and Beazer's shareholders reside in Atlanta as well as Charlotte, this factor is a wash. Cf. United States v. Reis, 2009 WL 3256217, at *5 (S.D. Ind. 2009) (denying transfer motion where defendant sought transfer to a district "where none of the alleged victims are located").

Most of the events that remain in issue have little connection to Charlotte, while virtually all the allegations (including the bank fraud charges) concern actions taken in Atlanta. See Br. at 6-8. The Government asserts that the alleged obstruction was aimed at the Western District of North Carolina, but the actual events in question allegedly took place in Atlanta, not in Charlotte. "Where 'it

---

[7] Mr. Rand need not offer specific examples of witness testimony, because it is not his argument that the witnesses would be *unable* to testify if the trial is held in Charlotte. Rather, Mr. Rand argues that the mere *inconvenience* to these witnesses must be considered in application of the *Platt* factors. See Br. at 4.

11

seems clear that the great majority of the events and transactions' that will be at issue at trial concern the defendant's business transactions and creation of financial reports that occurred in another jurisdiction, transfer is appropriate." Ferguson, 432 F. Supp. 2d at 565 (quoting United States v. Clark, 360 F. Supp. 936, 943 (S.D.N.Y. 1973)). Charlotte certainly has *some* interest in this case, but Atlanta's interest is much stronger.

The location of Mr. Rand and his family in Atlanta also justifies transfer. See Br. at 3-4. Mr. Rand maintains shared custody of his twin son and daughter, age 11, in Atlanta. His children are in school and cannot be with Mr. Rand in Charlotte. Id. This poses a tremendous burden, especially because the Government intends to take *five weeks* just to present *its* case.

In discussing this issue in its response brief, the Government attacks straw figures. The Government argues that Mr. Rand has no "right" to be tried in his home district, Gov't Br. at 7, but Mr. Rand acknowledged as much in his opening brief. See Br. at 3 ("Although a criminal defendant has no 'right' to be tried in his home district, 'the Fourth Circuit has held that a defendant should be tried in a court close to where the defendant lives.'" (citing Ferguson, 432 F. Supp. 2d at 562)).[8] The Government repeatedly states that the location of a criminal defendant

---

[8] The Government suggests that Ferguson court misread Fourth Circuit precedent on this point. See Gov't Br. at 8 n.1. However, the Fourth Circuit itself cited

12

has no "independent significance" in determining whether transfer would be in the "interest of justice," but this responds to an argument that Mr. Rand has not made. Gov't Br. at 7-8. At the same time, the Government concedes the argument Mr. Rand did make—that the location of the defendant is an important factor in assessing "the convenience of the parties," Fed. R. Crim. P. 21(b). See Gov't Br. at 7-8; United States v. Spy Factory, 951 F. Supp. 450, 456 (S.D.N.Y. 1997) ("[W]hile the Supreme Court has said that the defendant's residence has no 'independent significance,' and should not be given dispositive weight, the fact that all defendants reside in San Antonio weighs in favor of the transfer of venue" (citation omitted)); United States v. Donato, 866 F.Supp. 288, 293 (W.D. Va. 1994) ("Though the home of a defendant is not an independent ground for transfer, it may be considered along with other factors militating in favor of a change in venue.").

The convenience to Mr. Rand should be a significant factor in the Court's analysis. As the Second Circuit explained:

> Recognizing the unfairness and hardship to which trial in an environment alien to the accused exposes him, and the important policies underlying the venue provisions of the Constitution and Bill of Rights, the Supreme Court has declared that venue statutes should, whenever possible, be construed so to permit trial at the residence of the defendant.

---

Ferguson as a leading case with regard to Rule 21(b). See United States v. Johnson, 510 F.3d 521, 528-29 (4th Cir. 2007).

13

United States v. Cashin, 281 F.2d 669, 675 (2d Cir. 1960) (citations and internal quotation marks omitted)); see also United States v. Ohran, No. 99-cr-142, 2000 WL 620217, at *3 (S.D.N.Y. May 12, 2000) (many district courts "have given greater weight to the defendant's interest in being tried in the district of his residence than to any other factor"); United States v. Russell, 582 F. Supp. 660, 662 (S.D.N.Y. 1984) ("Unquestionably, it can be a hardship for defendants to stand trial far away from home. As a matter of policy, therefore, wherever possible, defendants should be tried where they reside.").

It may or may not be true that transfer to Atlanta would result in increased expense to the Government. Regardless, Courts have held that the Government is better able to bear this expense than the defendant. See, e.g., United States v. Radley, 558 F. Supp. 2d 865 (N.D. Ill. 2008) ("In balancing this factor [expense to the parties], other courts have recognized that the government has for all practical purposes, unlimited financial resources to bring to bear in the prosecution of its case." (quotation marks omitted)); Ferguson, 432 F. Supp. 2d at 567 (finding government better able to bear expense of trial in distant city, even though defendants had significant financial means, and transferring case from Virginia to Connecticut because bulk of eyewitnesses with personal knowledge of the events were located in Connecticut); see also United States v. Jessup, 38 F.R.D. 42 (M.D. Tenn. 1965) ("Surely the Government does not contend that Rule 21(b) was only

14

intended to benefit the poor. . . . It should not be necessary that a defendant show poverty . . . in order to be able to take advantage of this rule.").

## CONCLUSION

The question before the Court is whether, all things considered, "the case would be better off transferred to another district." In re Balsimo, 68 F.3d at 187. The Government would prefer if Mr. Rand, in order to succeed on this motion, had to prove that *no* witnesses reside in Charlotte, that *no* alleged victims reside in Charlotte, that Charlotte has *no* interest in the case, and that the Government would *not* bear an additional expense if the case is transferred. But that is not the law. Id. To sustain his burden, Mr. Rand need only prove that, relative to Charlotte, Atlanta would be a better venue. Mr. Rand has done so because the relevant factors overwhelmingly point to Atlanta as the district where the case should be tried. In particular, trial in Charlotte would inconvenience dozens of Atlanta witnesses, it would likely separate Mr. Rand from his children for two months, and it would cause two of Mr. Rand's attorneys to begin fatherhood from 250 miles away.

Accordingly, Mr. Rand respectfully asks this Court to sustain Mr. Rand's objections to the Order and transfer venue to the Northern District of Georgia, Atlanta Division.

This the 12th day of August, 2011.

15

        /s/ *Edward T.M. Garland*
        Edward T.M. Garland, Esq.
        Georgia Bar No. 284900
        */s/ Donald F. Samuel*
        Donald F. Samuel, Esq.
        Georgia Bar No. 624475

GARLAND, SAMUEL & LOEB, P.C.
3151 Maple Drive, N.E.
Atlanta, Georgia 30305
Phone: (404) 262-2225
Facsimile: (404) 365-5041

        /s/ *Stephen D. Councill*
        Stephen D. Councill, Esq.
        Georgia Bar No. 190358

ROGERS & HARDIN LLP
229 Peachtree Street, N.E.
2700 International Tower
Atlanta, Georgia 30303
Phone: (404) 522-4700
Facsimile: (404) 525-2224

        *Counsel for Defendant Michael T. Rand*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:10-CR-182 |
| | ) | |
| MICHAEL T. RAND, | ) | |
| Defendant. | ) | |
| | ) | |

# **CERTIFICATE OF SERVICE**

I hereby certify that I have this date served the within and foregoing *DEFENDANT'S OBJECTIONS TO MAGISTRATE'S ORDER DENYING HIS MOTION FOR TRANSFER OF VENUE* with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

This the 12th day of August, 2011.

/s/ *Donald F. Samuel*
Donald F. Samuel, Esq.
Georgia Bar No. 624475

GARLAND, SAMUEL & LOEB, P.C.
3151 Maple Drive, N.E.
Atlanta, GA 30305
Phone: 404-262-2225
Fax: 404-365-5041

17