IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-cr-182

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
|  | ) | ORDER |
| vs. | ) | |
|  | ) | |
| MICHAEL T. RAND, | ) | |
|  | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court upon the defendant's motions in limine to (1) exclude evidence regarding the defendant's compensation, (Doc. No. 73 at 14-15), and (2) exclude references to losses incurred by Wachovia, (Doc. No. 73 at 15-16), the government's responses to those motions, (Doc. No. 80 at 8-10; 10-11), and the defendant's reply, (Doc. No. 85 at 10-11). For the reasons stated below, the Court **DENIES** the defendant's motion in limine to exclude evidence regarding the defendant's compensation and **GRANTS** defendant's motion in limine to exclude references to losses incurred by Wachovia.

**I.      Evidence Regarding Defendant's Compensation**

The defendant seeks an Order from this Court barring the government from introducing "evidence of Rand's salary, 'perks,' benefits, or bonuses." (Doc. No. 73 at 15). The defendant argues that "one's income is not relevant to his or her guilt of charges." (Id. at 14). In support of his argument, the defendant cites United States v. Stahl, 616 F.2d 30 (2d Cir. 1980) and United States v. Ferguson, No. 3:06CR137, 2007 WL 4240782 (D. Conn. Nov. 30, 2007).

In Stahl, the prosecutor repeatedly made remarks to the jury which were designed to equate wealth with wrongdoing and to appeal to the potential bias of jurors. Stahl, 616 F.2d at

31. In its closing argument, the government stated that it had "properly argued to the jury the logical inference that a man whose total life is geared to make money in real estate would also, in all likelihood, be driven by greed to pay the $10,000 bribe in order not to pay substantial monies in taxes." Id. The district court commented that this trial strategy "impermissibly equates success, affluence and a single minded occupation with one's business affairs with greed and corruption" but did not find that the government had "gone that far" and denied the defendant's motion for a new trial. Id.

The Second Circuit reversed, finding that "this young prosecutor did in fact intend to arouse prejudice against the defendant because of his wealth and engaged in calculated and persistent efforts to arouse such prejudice throughout the trial. In addition, the prosecutor made several statements during the trial that were not supported by the evidence and may, in some instances, have been intentionally misleading." Id. at 32. Indeed, "the Government sought to connect Stahl with one bribe only, and this had nothing to do with the conduct of Stahl's business but instead arose out of the administration of his father's estate." Id.

In Ferguson, the District of Connecticut excluded evidence pertaining to salary and bonuses but allowed evidence regarding a deferred compensation plan. The court found "that evidence of Milton's salary and bonuses at AIG is inadmissible because it is irrelevant to the charges against him . . . . Milton's salary and bonuses were not affected by AIG's stock price; because of this, they are not probative of any financial incentive Milton may have had to participate in the [plan to manipulate the company's stock prices]." Ferguson, 2007 WL 4240782, at *1. "The evidence concerning Milton's deferred compensation plan, however, is relevant to proving motive, because AIG's performance affected Milton's benefits under the plan." Id. (citing United States v. Quattrone, 441 F.3d 153, 187 (2d Cir. 2006)).

2

The government argues that "Defendant's motive for the accounting fraud conspiracy was, in substantial part, his compensation. The accounting fraud inflated Beazer's reported earnings in 2006, in particular, and thus inflated the value of Defendant's substantial holdings of Beazer stock and his bonuses." (Doc. No. 80 at 8). The government also contends that the defendant's fraud was "designed to obtain the approval and praise of his superiors and thus increased compensation, salary, and bonuses" and that "[i]t worked." (Id.). The government states that the "evidence will show that as the fraud went on, Defendant received raises, promotions, and increased bonuses." (Id.).

Evidence of compensation may be introduced when it is relevant and admissible to prove motive, especially in conjunction with a limiting instruction. United States v. Schnabel, 939 F.2d 197, 202 (4th Cir. 1991) (allowing admission of evidence of financial motive); Edens v. Goodyear Tire & Rubber Co., 858 F.2d 198, 203 (4th Cir. 1988) ("motive is relevant to the requisite element of fraudulent intent"); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 325 (2007) (noting that "motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference" in securities fraud context); United States v. Kaiser, 609 F.3d 556, 561 (2d Cir. 2010) ("USF executives, including Kaiser, only received bonuses when USF met these targets, providing a powerful motive for Kaiser to inflate USF's [promotional allowance] income."); United States v. Quattrone, 441 F.3d 153, 187 (2d Cir. 2006) ("While evidence of compensation, wealth, or lack thereof can unduly prejudice jury deliberations, that evidence may be admitted where other safeguards are employed such as limiting instructions or restrictions confining the government's references to that wealth.").

However, only evidence that is relevant to the defendant's motive should be allowed. Ferguson, 2007 WL 4240782, at *1 (excluding evidence of salary and bonuses because they

3

were irrelevant to the charges against him but allowing evidence of the deferred compensation plan because of its relevance to the defendant's alleged motive to manipulate the company's financial statements to maintain its stock price).

Here, the defendant's counsel already introduced financial motive in his opening statement. See (Trial Transcript Volume I-B, page 41, lines 13-15 ("And this investigation produces for the investigator millions and millions of dollars.")). In addition, in cross-examination, defense counsel elicited testimony that the "investigator's" firm received over eight million dollars in fees generated from the instant case. See (Trial Transcript Volume III-B, page 644, lines 6-13). Further, during the cross-examination of Richard O'Connor, defense counsel asked Mr. O'Connor whether Beazer had "billions of dollars in revenue," confirming "that's 'b' - billion - right?"

Moreover, the evidence involves a substantial public company whose conduct involved billions of dollars in revenue. A properly instructed jury is not going to be inflamed or improperly affected by otherwise relevant testimony regarding the defendant's compensation levels. The Court finds that, if used properly, evidence of the defendant's compensation may be relevant to his alleged intent to defraud and that such evidence is not substantially outweighed by a risk of undue prejudice. Compare Ferguson, 2007 WL 4240782, at *1 ("Evidence that links a defendant's financial compensation to his possible motives for participating in an alleged fraud is relevant to proving the fraud.") with Stahl, 616 F.2d at 32-33 (reversing conviction on Rule 403 grounds where government persistently appealed to jury's potential prejudice against the wealthy). Defendant's motion in limine to exclude references to the defendant's compensation is therefore **DENIED**.

## II. Evidence of Wachovia's Loss

The defendant seeks an Order from this Court barring the government from introducing evidence of losses incurred by Wachovia. (Doc. No. 73 at 15-16). The defendant states that, according to the indictment, "Rand submitted false records to Wachovia Bank with regard to two separate loans. These offenses involved alleged misrepresentations on the financial statements that were provided to Wachovia in connection with the effort to obtain a revolving line of credit and a real estate acquisition and development loan." (Id. at 15 (citing Count One at ¶ 40; Count Four; Count Five)).

The government argues that evidence of Wachovia's loss is appropriate because, while it is not an element of 18 U.S.C. § 1014, it is relevant and admissible to show knowledge and intent. (Doc. No. 80 at 10). The government cites United States v. Munoz-Franco, 487 F.3d 25, 62 (1st Cir. 2007) in support of this assertion. (Id.). Munoz-Franco, however, is distinguishable from the instant case. Munoz-Franco is an 18 U.S.C. § 1343 bank fraud case, not a § 1014 false statement to a bank case. Munoz-Franco, 487 F.3d at 62. The defendant in that case used loan proceeds for an impermissible purpose in an ongoing scheme. Id. In finding that the trial court did not abuse its discretion, the appellate court noted with approval the strict limitations the trial court placed on counsel's use of loss evidence. Id. Indeed, they were not even permitted to argue it. Id. ("the district court carefully managed the effect of evidence relating to loss on the jury by preventing both parties from addressing loss in their closing arguments and instructing the jury that loss was not an element of the offenses charged").

Here, counsel seeks to introduce evidence of Wachovia's loss as proof of the defendant's intent to violate § 1014. This is problematic for two reasons. First, loss is not an element of § 1014. Second, courts have held that, in contrast to § 1343 cases, loss is not even relevant to

5

potential violations of § 1014. See, e.g., Elliott v. United States, 332 F.3d 753, 764 (4th Cir. 2003) (holding that neither loss nor proof of a "scheme to defraud" are elements of § 1014).

The government argues that, contrary to the defendant's "suggestion that his conduct was attenuated from Wachovia's loss, a witness from Wachovia will testify that it settled for and accepted a loss in substantial part because of knowledge about the fraud investigation and the potential impact on Beazer's ability to survive." (Doc. No. 80 at 11). In response, the defendant contends that "[e]vidence of Wachovia's eventual (alleged) loss has no bearing on Rand's state of mind when he allegedly made false statements in Beazer's financial statements." (Doc. No. 85 at 10). "Since the relevant time for purposes of 18 U.S.C. § 1014 is when the statements were made, it is irrelevant and prejudicial for the government to elicit testimony on Wachovia's later response to the announcement of the fraud investigation." (Id.).

Thus, it is not necessary or relevant to consider financial loss in determining whether a defendant has made a false statement to a bank in violation of 18 U.S.C. § 1014. Elliott v. United States, 332 F.3d 753, 764 (4th Cir. 2003) ("the element read by the courts into § 1344 - that a financial institution be put at risk of financial loss - does not compel us to read that same element into § 1014").

Wire fraud has three elements: (1) a scheme to defraud, (2) use of the wires in furtherance of the scheme, and (3) the specific intent to defraud. While it is not necessary to consider financial loss in evaluating a potential violation of 18 U.S.C. § 1349, United States v. Williams, 527 F.3d 1235, 1245 (11th Cir. 2008) (wire fraud does not require the government to prove actual financial loss or that the defendant benefitted from scheme), it may be relevant to such inquiry. Courts have held that loss is relevant in fraud cases to demonstrate a defendant's knowledge or intent to commit fraud. See, e.g., United States v. Zehrbach, 98 Fed. App'x 211,

218-219, 2004 WL 1049086, at *5 (4th Cir. 2004) (mail fraud) (citing United States v. Copple, 24 F.3d 535, 545 (3rd Cir. 1994) (mail fraud)); United States v. Davuluri, 239 F.3d 902, 906 (7th Cir. 2001) (wire fraud); United States v. Heimann, 705 F.2d 662, 669 (2d Cir. 1983) (mail fraud).

In the cited cases, unlike in the instant case, there was a direct connection between the defendant's actions and the victims' losses. In Zehrbach, the government argued that the defendant never intended to deliver the engines for which the victims paid. 98 Fed. App'x 211, 218 ("In a mail fraud prosecution, evidence that the victims suffered losses and the defendant refused to make good those losses is relevant to show the defendant's specific intent to defraud.") In Copple, the defendant was the former President of an investment firm specializing in the management of "pre-need" funeral funds. 24 F.3d at 535. "Copple's defense was that he had simply made a bad business decision when he, as trustee, had relied on the advice of experts to invest in rare coins. Yet the funeral directors had to pay for their losses out of their own pockets, while he refused to part with any of the luxuries he had purchased with the [company's] 'pre-need' funds." Copple, 24 F.3d at 545. In affirming the defendant's convictions for mail fraud and tax evasion, the Third Circuit stated that the "evidence of Copple's refusal to part with the property under such circumstances was, we believe, evidence of Copple's fraudulent intent." Id. In Davuluri, the Seventh Circuit held that evidence that the defendant, an experienced commodities trader, invested $50,000 he obtained from the victim after telling the victim that only $5,000 would be at risk, made investments that resulted in over $785,000 in losses to the victim, and impersonated the victim when making changes to the victim's investment accounts, was sufficient to establish the defendant's intent to defraud, as required to support convictions for mail fraud and wire fraud, even if the defendant intended his scheme to generate a profit.

7

Davuluri, 239 F.3d at 902. In Heimann, the defendant and his wife devised and executed a scheme to defraud a small group of antique jewelry merchants, auction houses and banks out of substantial sums of money and precious objects. 705 F.2d at 664.

In the instant case, the defense argues that the loss incurred by Wachovia could have been caused by a myriad of reasons. The defendant states that "[t]here is no logical connection between the inaccuracy on a financial statement and Beazer's decision to allow the bank to foreclose on a certain property." (Doc. No. 73 at 16). Indeed, the government does not contend that the defendant intended to defraud Wachovia. The government states that the "evidence will show that Defendant was aware of the loan to Wachovia, aware that Wachovia relied on Beazer's (false) financial statements, and knew that if his fraud was uncovered, it would have a devastating impact on Beazer's ability to meet all if its financial commitments, including to Wachovia." (Doc. No. 80 at 11). This slight connection minimizes the probative force of the evidence of Wachovia's loss.

The Court weighs the probative value of relevant evidence against the dangers of unfair prejudice, confusion of the issues, misleading the jury and needless presentation of cumulative evidence, Federal Rule of Evidence 403, and finds in favor of excluding evidence of Wachovia's loss. The defendant argues that introducing evidence of Wachovia's loss may confuse the jury:

> If the government is permitted to introduce irrelevant evidence relating to loss (i.e., Beazer's failure to repay the loan), the defense would be entitled to rebut the inference the government seeks to draw, by proving other causes of the failure to pay the loan – none of which were relevant to the alleged false statement on the financial statements. The jury has no business considering why Beazer failed to pay the loan – it is not an element of any offense and does not reveal the defendant's state of mind at some time in the past when the financial statements were authored. Making this a contested issue at trial will further confuse a complicated set of accounting issues with which the jury will be required to wrestle.

(Doc. 85 at 11). The Court agrees, and is concerned that introduction of evidence relating to Wachovia's loss would confuse the issues, mislead the jury and result in needless presentation of cumulative evidence. FED. R. EVID. 403. As stated above, evidence of loss is not necessary to prove a violation of either 18 U.S.C. § 1014 (false statement to a bank) or 18 U.S.C. § 1349 (wire fraud conspiracy) and in fact is only relevant in evaluating a violation of § 1349. On these facts, the Court finds that Wachovia's loss is only marginally relevant to the defendant's alleged intent to violate § 1349 and finds that the relevance of such information, if any, is substantially outweighed by the danger of jury confusion. Defendant's motion in limine to exclude references to losses incurred by Wachovia is therefore **GRANTED**.

Signed: October 14, 2011

Robert J. Conrad, Jr.
Chief United States District Judge