UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | DOCKET NO. 3:10-cr-00182-RJC |
| v. | ) | |
| | ) | **GOVERNMENT'S OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTION *IN LIMINE*** |
| MICHAEL T. RAND | ) | **WITH RESPECT TO GMAC AND** |
| | ) | **PROPERTY MANAGEMENT** |
| | ) | **AGREEMENTS** |
| | ) | |
| | ) | |

NOW COMES the United States of America, by and through Jill Westmoreland Rose, Attorney for the United States pursuant to 28 U.S.C. § 515, and hereby files this opposition to Defendant's motion *in limine* with respect to GMAC and property management agreements. (Doc. No. 268.)

**I.      The Property Management Agreements and Related Arguments Are Admissible.**

Defendant baldly asserts that "the government should be barred from eliciting witness testimony about whether the PMAs are a 'side agreement'; whether Beazer can enforce and is bound by the PMAs; and whether the MSRAs expressly incorporate the PMAs." Defendant's one paragraph argument cites to no case law in support of this unsupportable position.

Instead, Defendant summarily asserts that these are "legal conclusions" that are "offered by lay witnesses" which are purportedly "impermissible opinion evidence under Federal Rules of Evidence 701 and are likely to confuse and mislead the jury under Federal Rule of Evidence 403." (Br. at 5-6.)

Defendant misunderstands the Rules of Evidence. Certainly witnesses are permitted to testify as to what any contract or other document, which has previously been admitted into evidence, says. Witnesses are also permitted to testify as to what their understanding is. Those

are not legal conclusions.[1]  For example, it is perfectly appropriate for the Government to ask a witness (like an employee of Deloitte from whom Defendant sought advice as to the appropriate accounting treatment based upon the contract he provided to Deloitte) what the contract states, what his personal understanding of that contract language is, and how knowing of that additional language would have changed his determination of the appropriate accounting treatment.

Moreover, to the extent these witnesses are providing "opinions" those opinions are consistent with the Federal Rules of Evidence.  Namely, these witnesses are (1) auditors who were asked by Defendant to review the contracts to make a determination as to what the appropriate accounting treatment is in light of the language of the contract and (2) other Beazer accounting employees who were likewise tasked (by Defendant) with ensuring that the sale-leaseback transactions received the appropriate accounting treatment.  The testimony of these witnesses is rationally based upon their own perception and it is helpful to clearly understanding the remainder of the witness's testimony and determining a fact at issue.  Further, they are testifying as to their understanding, based upon their professional and educational experience and the job they had at the time.  Thus, it is not "based upon scientific, technical, or other specialized knowledge." And, to the extent that the witness' testimony is based upon scientific, technical or other specialized knowledge, such witnesses are qualified to offer that testimony.  Indeed, Defendant asked Deborah Haertell to prepare a memorandum discussing how Beazer was to account for revenues it received pursuant to its sales-leaseback agreements, so that such memorandum could be provided to Deloitte.  He likewise sought advice from Deloitte as to what the appropriate accounting treatment was based upon the information he provided to Deloitte.  It is nonsensical for him to now assert that the Government cannot ask those witnesses how what

---

[1] To the extent that a limiting instruction is appropriate, the Government, of course, would be happy to work with Defendant to propose an appropriate instruction.

they wrote and what they determined would have changed if they had the accompanying Property Management Agreement, which reflected Defendant's handshake deal with GMAC.

And, of course, much depends on the form of the question. This is evident from the transcript pages to which Defendant cites (at 5) where he often rephrased the question after the objection to which he cites was sustained. For example, while not permitted to ask "Have you seen a contract that gives Beazer the right to share in appreciation?" he was permitted to ask "Have you seen a document that looks like it might give Beazer the right to share in appreciation." (Tr. at 1897-98.) Similarly, while not permitted to ask "And there is no agreement that binds Beazer to give or to receive upside, correct?" Defendant was permitted to ask "Have you seen any agreement that would allow Beazer to share in the upside?" (Tr. at 1871.) Thus, at most, Defendant's motion should be denied as premature.

Finally, it is black letter law that evidence is not to be excluded where, as here, Defendant baldly argues that it is "likely to confuse and mislead the jury under Federal Rule of Evidence 403." (Br. at 6.) It is well established that "damage to a defendant's case is not a basis for excluding probative evidence. And for good reason. Evidence that is highly probative invariably will be prejudicial to the defense." *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998). Instead, "the touchstone for excluding evidence under Rule 403 is not prejudice, but 'unfair' prejudice. Moreover, unfair prejudice must 'substantially' outweigh the probative value of the evidence." *Id.* "Because the evidence sought to be excluded under Rule 403 is concededly probative, the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996). The same logic and reasoning applies to an argument that evidence must be excluded because it is purportedly "confusing the issues" or "misleading the jury." That is, Rule

3

403, by its terms, also requires Defendant to show that the danger of "confusing the jury" or "misleading the jury" substantially outweighs the probative value of the evidence. Fed.R.Evid. 403. Defendant has not – and cannot – make this showing here. Quite the contrary, this testimony – from witnesses who dealt with Defendant and whose job it was to evaluate the applicable agreements and determine the appropriate accounting treatment – is highly probative and runs no risk of confusing or misleading the jury.[2]

## II. The Bates Stamp on the Property Management Agreements.

The Government agrees not to argue that Defendant was aware of the Property Management Agreement based upon the Bates stamp showing that Defendant produced the document. Of course, the Government reserves the right to rely upon other evidence provided in discovery and testimony from other witnesses to establish Defendant's knowledge of the Property Management Agreements and/or their terms.

---

[2] Defendant's footnote arguments that (1) the fact the Indictment refers to an oral side agreement is somehow related to his motion (at 2 n.1); and (2) that the PMA could not be the side agreement because it is in writing and such argument would purportedly be a material variance from the Indictment (at 6 n.2) are entirely without merit.

First, as the evidence showed, Defendant did enter into an oral "handshake" or "side" agreement. There can be no true dispute about that. He said as much in numerous emails. The fact there was an oral side agreement or handshake deal does not preclude, as was the case here, the parties from also memorializing it. That is, nothing in the Indictment indicates that there was only one side agreement or that the agreement was never written down. It simply says, as Defendant said over and over, that there was an oral side agreement and that the provision by which Beazer shared in the upside was not written out in the Master Sale Rental Agreement, which was to be provided to Beazer's auditors.

Second, Defendant's variance argument is absurd. The Indictment specifically mentions the PMA and the fact that the "PMA explicitly provided that, upon the resale of the model homes, Beazer would split, on a 50/50 basis, any remaining profits from those resales." (Indictment, ¶25.) It also, in at least two places, refers to "a hidden side agreement" without reference to whether such agreement was in writing or oral or both. (*Id.* at 3, 4.)

4

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that Defendant's motions *in limine* with respect to GMAC and property management agreements be denied.


RESPECTFULLY SUBMITTED this 4th day of April, 2014.

>JILL WESTMORELAND ROSE
>ATTORNEY FOR THE UNITED STATES
>PURSUANT TO 28 U.S.C. § 515
>
>**s/ Kurt W. Meyers**
>DC Bar Number: 490500
>**s/ Maria K. Vento**
>VA Bar Number: 45960
>Assistant United States Attorneys
>United States Attorney's Office
>227 West Trade Street, Suite 1700
>Charlotte, North Carolina 28202
>Telephone: 704.344.6222
>E-mail: Kurt.Meyers@usdoj.gov
>         Maria.Vento@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of April 2014, the foregoing document was served electronically through ECF filing upon Defendant at the following addresses:

David S. Rudolf, Esq.
dsrudolf@rwf-law.com

Brent J. Gurney, Esq.
Brent.gurney@wilmerhale.com

Stephen D. Councill, Esq.
scouncill@rh-law.com

**/s/ Maria K. Vento**