UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | DOCKET NO. 3:10-cr-00182-RJC |
| v. | ) | |
| | ) | **GOVERNMENT'S OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTION *IN LIMINE*** |
| MICHAEL T. RAND | ) | **REGARDING ACCOUNTING** |
| | ) | **EVIDENCE AND ISSUES** |

NOW COMES the United States of America, by and through Jill Westmoreland Rose, Attorney for the United States pursuant to 28 U.S.C. § 515, and hereby files this opposition to Defendant's motion *in limine* regarding accounting evidence and issues. (Doc. No. 264.)

## INTRODUCTION

During the first trial, Defendant filed a motion *in limine* to bar the prosecution from asking witnesses whether certain accounting entries were "fraud" or "fraudulent." (Doc. No. 118.) The Court heard argument on this issue on the morning of October 17, 2011. (Trial Tr. at 1090-93.) Based upon the case law at the time, the Court found that while questions using the word "fraud" were relevant, the Court "ha[d] a 403 concern with the jury confusing this loaded term of fraud being used in its legal sense." (*Id*. at 1093.) The Court went on to instruct the Government to "find a word other than the word fraud in terms of that line of questioning, false, incorrect, improper, all those might be less confusing and so, put us on a better track."[1] (*Id*.)

---

[1] As discussed *infra* and in response to Defendant's Motion *in limine* to exclude testimony identifying accounting entries or practices as "fraud" or "fraudulent" or that Defendant "lied" (Doc. No. 267), since the Court's ruling the Fourth Circuit has decided the case of *United States v. Offill*, 666 F.3d 168 (4th Cir. 2011), holding that co-conspirator testimony that their conduct was, *inter alia*, fraudulent is proper lay witness testimony. *See id*.

Defendant now takes issue with the Court's choice of alternative words, seeking to bar witnesses using the terms "improper" and "wrong." As discussed in the Government's Opposition to Defendant's motion to preclude the use of the word "fraud" (Doc. No. 267), Fourth Circuit law decided since the last trial makes clear that not only is the use of the words "improper" and "wrong" appropriate, but co-conspirator testimony that their conduct was, *inter alia*, fraudulent is proper lay witness testimony. *See United States v. Offill*, 666 F.3d 168 (4th Cir. 2011), In that light, it is not surprising that Defendant offers no legal reason for this Court to reverse its ruling in the previous trial that questions using the terms "improper" or "wrong" are appropriate. The law is clear that these questions are appropriate. Defendant's motion should be denied.

Defendant also asks the Court to improperly limit *ex ante* the Government's presentation of its case and relieve his counsel from making proper objections and arguments during the trial.[2] Defendant cites no law in support of his unprecedented requests. They too should be rejected, and his motion denied.

### I. Lay Witness Testimony Regarding the Impropriety of His/Her Own Conduct is Admissible.

Defendant's motion feigns surprise that his co-conspirators testified during the first trial that he engaged in improper accounting, incorrectly suggesting that "[t]he government did not designate these witnesses as experts (nor could it)." (Br. at 2.) The Government's Rule 16 notice before the last trial raised this exact issue with Defendant:[3]

---

[2] Defendant's brief is replete with mischaracterizations of the evidence presented and arguments made in the first trial. In light of the sheer volume of inaccuracies and the fact that they are not relevant to the issues presented, the Government has not undertaken to point out or correct each of these misstatements.

[3] Defendant has expressly declined Rule 16 expert discovery in advance of the retrial.

> As the 302s undoubtedly make clear, all or nearly all the Government lay witnesses who testify regarding Defendant's accounting misconduct will testify as to their understanding of the relevant accounting rules and standards and will provide sufficient background and context to allow the jury to understand their testimony. We do not believe such testimony is opinion testimony. If you disagree, please let us know so it can be raised with the Court. We do not want you to be surprised.
>
> …
>
> We may call Corbin Adams [who was] employed by Deloitte at the time of the model home leaseback charged conduct…[W]e believe [his] testimony will be entirely lay witness testimony. Nevertheless, again out of an abundance of caution, we hereby make clear that [his] testimony may include the fact that, based on FAS 66 and FAS98, Defendant's agreement to participate in the upside as reflected in the Property Management Agreement would preclude sale treatment.

(Doc. No. 148-2 at 4, 5.)

Regardless, contrary to Defendant's new assertions, it is well established that a lay witness co-conspirator may testify regarding the impropriety and/or illegality of his or her own conduct. *See United States v. Offill*, 666 F.3d 168 (4th Cir. 2011); *United States v. Locke*, 643 F.3d 235, 240 (7th Cir. 2011); *see also United States v. Poulin*, 461 Fed.Appx. 272, 282-83 (4th Cir. 2012) (no error in admitting testimony from lay witnesses that they refused to engage in certain conduct requested by defendant because it was illegal).

Tellingly, Defendant fails to mention, never mind address, the Fourth Circuit's decision in *Offill*, which is squarely on point and rejects Defendant's argument. The defendant in *Offill* appealed his convictions for securities and wire fraud claiming that the district court erred in admitting the testimony of two lay witnesses concerning the improper nature of the conduct they engaged in with the defendant and the definition of certain specialized terms. *Offill*, 666 F.3d at 177. In finding no error, the Fourth Circuit explained that one of the witness's testimony that "describe[d] his own actions as 'fraudulent,' securities manipulation,' and 'illegal'" was not improper opinion testimony on a specialized topic because it "would be helpful to the jury because it shed light, based on [the witness's] personal knowledge of his own illegal conduct, on

3

the nature and purpose of the conspiracy and [the defendant's] interaction with [the witness] in furthering its illegal aims." *Id*. at 177-78. Similarly, the Fourth Circuit found no error in admitting the testimony of the two lay witnesses about their understanding of certain specialized terms and legal requirements because they were relevant to understanding "the conspirators' efforts at circumventing securities laws requirements." *Id*. at 178. Indeed, the Court noted that given the testimony's relevance to that issue, it was "irrelevant" whether the witness's understanding was even "legally correct." *Id.* In other words, it did not matter whether the witness was right when he testified that his conduct was improper because he believed it to be improper, which is obviously relevant to the witness's and the defendant's state of mind.

Other Circuits are in accord. For example, in *Locke* the Seventh Circuit found no plain error in the district court allowing lay witnesses to testify that the defendant's submission of false information in connection with obtaining loans constituted "fraud," "misrepresentation," "funny business," and "fraudulent" activity that would have resulted in a denial of the loan application. *See* 643 F.3d 235, 237-38. In reaching its holding, the Court noted that there is no prohibition on the lay witnesses offering opinions regarding the importance of defendant's conduct, so long as it is "helpful." *Id*. at 241-42 ("We easily conclude that [the witnesses'] opinions about the falsehoods' influence on the loan decisions would have helped the jury reach a conclusion regarding the materiality element of the wire fraud charges."). The Court also expressly rejected defendant's argument that the witnesses' testimony about "fraud" and "misrepresentation" constituted improper legal opinions. *Id.* at 242. ("The jurors could hardly confuse the words 'what we call funny business or misrepresentation' with commentary on the elements of wire fraud.").

4

Accordingly, lay witness testimony from Defendant's co-conspirators about their understanding of whether certain conduct Defendant asked them to engage in was improper, wrong, or illegal is admissible because it "would be helpful to the jury" in understanding "the nature and purpose of the conspiracy and [the Defendant's] interaction with [the witnesses] in furthering its illegal aims." *Id.* at 177-78; *see also United States v. Hassan*, 742 F.3d 104, 136 (4th Cir. 2014) ("Lay opinion testimony is particularly useful when … the terms and concepts being discussed … are likely to be unfamiliar to the jury."). Similarly, testimony from lay witnesses about their understanding of GAAP or their interpretation of accounting rules is admissible, even if their understanding is incorrect, because it is relevant to their, and the Defendant's, state of mind when engaging in the conspiracy. *Id.* at 178.

The remainder of Defendant's brief on this topic incorrectly argues that accounting matters require expert testimony because GAAP is "complex and highly technical." (Br. at 4-6.) Hereto, Defendant wholly misses the mark. He is not charged with violating GAAP. He is charged with securities fraud. The law is clear that the Government is not required to call an expert to testify as to GAAP:

> [E]ven where improper accounting is alleged, the statute requires proof only of intentionally misleading statements that are material, *i.e.*, designed to affect the price of a security. 15 U.S.C. § 78ff. If the government proves that a defendant was responsible for financial reports that intentionally and materially misled investors, the statute is satisfied. The government is not required in addition to prevail in a battle of expert witnesses over the application of individual GAAP rules.

*United States v. Ebbers*, 458 F.3d 110, 125-26 (2d Cir. 2006); *see United States v. Rigas*, 490 F.3d 208, 219-22 (2d Cir. 2007) (rejecting defendant's argument that "because FAS 5 applies . . . the district court should have required the prosecution to prove non-compliance [with GAAP], or, at the very least, offer expert testimony on the subject" and noting that "[i]n *Ebbers*, we also

5

Case 3:10-cr-00182-RJC-DSC   Document 284   Filed 04/04/14   Page 5 of 10

foreclosed Defendants' argument that the court should have required the prosecution to call expert witnesses to testify regarding GAAP and, specifically, FAS 5").[4]

## II. Defendant Cannot Direct the Manner of the Government's Presentation of Evidence.

The remainder of Defendant's motion improperly seeks to control the manner of the Government's presentation of evidence, including its questioning and argument, and abdicate his counsel's responsibility for lodging proper objections, making persuasive arguments, and conducting effective cross-examination. Not surprisingly, Defendant cites no case law supporting his bizarre request that he essentially be permitted to script the Government's direct examinations.

Defendant's arguments in support of his unsupportable motion are unavailing. First, Defendant claims that cross-examination, objections, and rebuttal arguments are somehow "not a sufficient check" on the Government's obligation to follow the Rules of Evidence because of the "sheer scope of questioning by the government." (Br. at 8, 11.) Defendant has hired very experienced attorneys from at least four separate law firms to represent him at trial. Those attorneys are more than capable of lodging objections in response to particular questions, just as is done in every other trial. Indeed, Defendant already has the transcript from the first trial, so he is far more prepared to object to questions and cross-examine witnesses then the defendants in virtually every other trial.

---

[4] Moreover, Defendant's arguments about the complexity of GAAP prove too much. Under Defendant's view, because medicine is generally a complex subject, no lay witness could ever opine whether the substance oozing from a bullet hole was blood. This is obviously not the law. *See Offill*, 666 F.3d at 177. Like any broad subject, certain aspects of GAAP may be complicated while others may be obvious to everyone. The witnesses who testified about whether Beazer's accounting complied with fundamental accounting principles were all providing proper lay opinions pursuant to Rule 701. But, in any event, each also had the relevant qualifications to offer expert opinions concerning GAAP under Federal Rule of Evidence 702.

6

Next, Defendant identifies a handful of specific questions from the first trial taken out of context to suggest that the Government engaged in a "strategy" of misleading the jury by asking questions that were vague.[5]  (Br. at 7.)  Defendant made strategic decisions as to when to object and when not to object to questions during the first trial.  That he now, having been convicted, wishes he had lodged more objections does not somehow create an unprecedented right for him to dictate the form or order of the questions the Government will ask on retrial.  Defendant, as he did in the last trial, has the right to object during witness examinations in the retrial, if he believes a question is vague.  And, again, the Government has every reason to believe that whichever of Defendant's team of attorneys is objecting will be facile enough to follow the examinations and lodge timely objections.

In short, the Government is well aware of the requirements of the Federal Rules of Evidence, including Rules 402, 403, 601, and 602.  To the extent the Defendant believes that any question the Government asks is objectionable pursuant to one of those Rules, his counsel is free to object at the time of the question, clarify a witness's answer on cross-examination, and/or make an argument in rebuttal.  But there is no support for Defendant's attempt to try to control the manner of the Government's presentation *ex ante*.

---

[5]  What is misleading is Defendant's argument insofar as he plucks questions and answers out of context.  As Defendant well knows an examination is like a conversation. Questions often build on each other drawing from the previous questions and answers.  To require the Government to repeat certain terms each time or ask certain questions in a certain order would no doubt confuse the jury and waste the Court's time.

7

### III. Defendant Cannot Bar the Government From Asking the Jury to Make Reasonable Inferences.

Lastly, Defendant makes the unsupported – and unsupportable – argument that the Government should not be able to draw reasonable inferences in its arguments.[6] Notably, and dispositively, Defendant concedes (as he must) that evidence showing he "directed the accounting adjustments at issue with the objective of managing earnings or that the accounting was improper may be relevant" to the jury's determination of whether Defendant made false statements (Br. at 13). Nevertheless, he asks the Court to bar the Government from arguing that connection to the jury. The basis for this request is Defendant's flimsy assertion that "an adjustment may be improper from an accounting matter without making the financial numbers inaccurate." (Br.. at 12.) In Defendant's view, such argument is improper because even if he made accounting adjustments by blindly throwing darts at a spreadsheet, it is theoretically possible that his dart hit the right number or conversely, even if he fraudulently manipulated the accounting, the accounting might have serendipitously still arrived at an "accurate" number. These theoretically possibilities cannot preclude the Government from arguing what witness after witness testified to and the documentary evidence established, *i.e.*, that when Defendant ordered improper adjustments to be made to Beazer's accounting records to manage earnings, he caused Beazer's financial statements, which were generated from those accounting records, to be false. Again, to the extent Defendant believes that the Government's argument during retrial overstates the inferences that can be drawn from the evidence, the proper response is to object at that time and/or respond during his own closing argument.

---

[6] Moreover, a review of the entirety of the arguments (and record) makes clear that Defendant is wrong in his assertion that the Government previously conflated earnings management with false statements in financial statements. Instead, he has once again plucked quotes out of the record in a misleading fashion. Regardless, as discussed *infra*, his argument should be rejected.

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that Defendant's motion *in limine* be denied.

RESPECTFULLY SUBMITTED this 4th day of April, 2014.

                          JILL WESTMORELAND ROSE
                          ATTORNEY FOR THE UNITED STATES
                          PURSUANT TO 28 U.S.C. § 515

                          **s/ Kurt W. Meyers**
                          DC Bar Number: 490500
                          **s/ Maria K. Vento**
                          VA Bar Number: 45960
                          Assistant United States Attorneys
                          United States Attorney's Office
                          227 West Trade Street, Suite 1700
                          Charlotte, North Carolina 28202
                          Telephone: 704.344.6222
                          E-mail: Kurt.Meyers@usdoj.gov
                                          Maria.Vento@usdoj.gov

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 4th day of April 2014, the foregoing document was served electronically through ECF filing upon Defendant at the following addresses:

 David S. Rudolf, Esq.
 dsrudolf@rwf-law.com

 Brent J. Gurney, Esq.
 Brent.gurney@wilmerhale.com

 Stephen D. Councill, Esq.
 scouncill@rh-law.com


           **/s/ Maria K. Vento**