UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:10-CR-182 |
| | ) | |
| MICHAEL T. RAND, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
NON-PARTY BEAZER HOMES USA, INC.'S
MOTION TO QUASH RULE 17 SUBPOENAS**

Beazer's undifferentiated request to quash seven trial subpoenas—including one subpoena for trial testimony, and two directed at third parties—should be denied, for at least three reasons:

*First*, Beazer failed to engage in any meaningful discussions with Mr. Rand in an effort to address its concerns before burdening the Court with this motion.

*Second*, Beazer argues as if Mr. Rand is asking for pretrial production. He is not. All of the subpoenas at issue here are trial subpoenas. Furthermore, Beazer's repeated claim that Mr. Rand seeks the very same documents that the Court has refused him ignores that many requests have nothing to do with prior requests; that certain Beazer requests seek a more specific, targeted set documents than previously sought (e.g., bond-status documents); and that Mr. Rand now seeks limited information from Beazer (a non-party) through a trial subpoena rather than from the government.

*Third*, Beazer seeks to quash all the subpoenas based on conclusory claims of privilege. It is well-settled that Beazer (as the proponent) has the burden of establishing privilege. Beazer has not met that burden. Other than a generalized, conclusory assertion that all of the requested documents are privileged, Beazer makes *no* effort to support its claim. It does not even provide a privilege log. In addition, any applicable privileges are waived by Beazer's broad sharing of the contents of the requested information with the government or others.

## I. BEAZER'S MOTION SHOULD BE DENIED AS PREMATURE

Beazer filed its motion to quash after making no serious effort to negotiate with Mr. Rand to resolve Beazer's concerns. *See* Ex. A (email correspondence between counsel). Counsel for Mr. Rand offered "to confer in good faith in an effort to resolve any concerns" raised by Beazer and pledged to "try to find ways to resolve those concerns," if Beazer identified them as to each request. *Id.* But counsel for Beazer deemed any such discussion not "productive" even before attempting it. *Id.*; *see id.* (6/09/14 email from counsel for Beazer disclaiming any duty under the Local Rules "'to attempt[] in good faith to resolve areas of disagreement'" before filing a motion in a criminal case). Mr. Rand remains ready to discuss accommodations, but those negotiations have been foreclosed by Beazer's rush to court. To give those discussions an opportunity to occur, the motion to quash should be denied, without prejudice. Otherwise, Beazer has no incentive to engage in real discussions.

2

Granting Beazer's motion now before the parties engage in any negotiation would be particularly unjustified given the extreme remedy Beazer seeks: quashing all seven of the subpoenas in their entirety. Beazer does not and cannot contend that *all* of the requested records are irrelevant, inadmissible, or insufficiently identified. Beazer's failure to engage in any discussion precludes the possibility of modifying the subpoenas, which is the "preferable" "course" "to simply quashing the entire subpoena[s]." Robert M. Cary et al., *Federal Criminal Discovery* 252 (2011).[1]

## II. BEAZER'S MOTION SHOULD BE DENIED ON THE MERITS

On the merits, Beazer's motion should be denied with respect to each of the subpoenas, including those directed to Navigant Consulting and Alston & Bird. There is a "sufficient likelihood" that the materials sought in each subpoena are relevant and admissible, including for impeachment purposes. *Nixon*, 418 U.S. at 682; *see In re Martin Marietta Corp.*, 856 F.2d 619, 622 (4th Cir. 1988); *United States v. King*, 194 F.R.D. 569, 574 (E.D. Va. 2000) (impeachment). And the requests are sufficiently specific because they "limit[] documents to a reasonable period of time and state[] with reasonable precision the subjects to which the documents relate." *United States v. Wittig*,

---

[1] Beazer's claim that it is now too late to comply with the trial subpoenas because they were issued "[w]ithin just weeks until the second trial" (Doc. No. 317, at 1) is unfounded. Two of the subpoenas were served in mid-May, and the remaining subpoenas were served at the end of May, allowing at least five weeks for compliance. But, here again, to the extent that Beazer has legitimate concerns with timing and burden, Mr. Rand stands ready to address those issues with Beazer directly.

3

250 F.R.D. 548, 552 (D. Kan. 2008); *see United States v. Libby*, 43 F. Supp. 2d 26, 31 (D.D.C. 2006) ("exquisite specificity" is not required).

Indeed, contrary to Beazer's presentation of its argument (at 6), Mr. Rand has no possible interest in being overwhelmed at trial with an avalanche of "irrelevant" or "duplicative" documents. That is why the subpoenas are carefully targeted at specific categories of evidence highly likely to be relevant and admissible. And Beazer's claims of privilege are conclusory and unfounded in light of Beazer's past disclosures.[2]

---

[2] Although the subpoenas satisfy the three factor *Nixon* test, Mr. Rand contends that the text of Rule 17(c) and *Nixon* establish a more lenient standard for determining whether to quash a subpoena to a non-party such as Beazer (as opposed to the government). By its terms, a Rule 17(c) subpoena may be quashed only "if … production would be 'unreasonable or oppressive,' but not otherwise." *United States v. Nixon*, 418 U.S. 683, 698 (1973). Thus, the only question is whether "the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond." *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008). *Nixon* derived its different test from cases involving subpoenas *to a party*—cases premised on the notion that Rule 17 should not be used to avoid the limitations of Rule 16. *See Nixon*, 418 U.S. at 698-700 (discussing *Bowman*, 341 U.S. 214, and *United States v. Ioza*, 13 F.R.D. 335, 336 (S.D.N.Y. 1952)). But *Nixon* declined to decide whether "a lower standard" might apply to a subpoena issued to a third party, *id.* at 699 n.12, and later courts have adopted the lower standard because the Rule 16 concern animating *Nixon* has no bearing "[i]n the context of a subpoena to a third party," *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 322 n.1 (S.D.N.Y. 2011); *see also United States v. Nosal*, 291 F.R.D. 403, 407-408 (N.D. Cal. 2013); *Tucker*, 249 F.R.D. at 66. Although the Fourth Circuit has applied the *Nixon* standard to Rule 17(c) subpoenas to third parties, it does not appear to have expressly considered whether a lower standard should instead apply, thus leaving that question open. *See, e.g.*, *United States v. Richardson*, 607 F.3d 357, 368 (4th Cir. 2010); *In re Martin Marietta Corp.*, 856 F.2d at 621. Since the requested subpoenas are appropriate under either standard, the issue here is academic. However, Mr. Rand specifically preserves the issue in the event the Court grants Beazer's motion to quash.

4

### A. Subpoena to Beazer for records pertaining to alleged deletion of emails ("Beazer Subpoena 1") (Doc. 317-1)

The first subpoena to Beazer seeks eight narrowly drawn categories of documents. For each category (save one), Mr. Rand has provided a specific date range to which the documents pertain or during which they were made.[3] Far from a "fishing expedition," even Beazer recognizes (at 7) that every one of the requested categories relates to the alleged deletion of emails between March 23 and March 30, 2008—that is, to the "basis of the obstruction charges" against Mr. Rand.

With respect to the specific categories of documents sought, there is a sufficient likelihood that emails from, to, or copying Deborah Danzig on March 30, 2007 (Beazer Subpoena 1, Attach. A, ¶1) are relevant and admissible as bearing on the precise timing of when Mr. Rand allegedly came by Ms. Danzig's desk to ask whether Beazer's hold notice applied to emails. The timing is critical: The government alleges this conversation occurred *before* Mr. Rand deleted emails, Tr. 2207-08, while the defense alleges it occurred *after* Mr. Rand deleted emails, Tr. 2262-64. Ms. Danzig's emails from that day will show whether Ms. Danzig was working at her desk at periods surrounding the alleged conversation. Beazer cannot reasonably complain that it would have any difficulty identifying with specificity the emails sought, from a single custodian on a single day. The remaining categories of documents are similarly focused on a

---

[3] Paragraph 6 of Attachment A to Beazer Subpoena 1 seeks "[t]he reports referenced in paragraph 25 of the declaration of David Januszewski filed … on August 17, 2012." The Januszewski declaration describes those reports as "relevant to the [alleged] deletion patterns" of emails. Doc. 180-3, at 7 (¶ 25).

5

Case 3:10-cr-00182-RJC-DSC   Document 319   Filed 06/20/14   Page 5 of 18

narrow and specific timeframe that forms the critical moment for many of the prosecution's allegations against Mr. Rand; they also bear directly on the circumstances of the slipshod forensic investigation of those alleged email deletions, and thus may have significant evidentiary value for impeachment purposes.

Beazer contends (at 7-8) that some emails to, from, or copying Ms. Danzig on March 30, 2007 may be privileged because Ms. Danzig was an in-house attorney at the time. This claim fails for three reasons: First, Beazer does not even attempt to carry its burden of showing that the privilege attaches. *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). Second, any such privilege is waived: Ms. Danzig testified extensively at the first trial concerning the subject-matter of emails she sent on March 30, 2007. *E.g.*, Tr. 149-150; *see Martin Marietta Corp.*, 856 F.2d at 623 (discussing subject-matter waiver). Third, if Beazer has valid privilege concerns it should produce a privilege log and set forth the basis for the privilege. The remedy is not to quash the subpoena in its entirety. A blanket assertion of privilege is no basis for denying Mr. Rand all access to evidence that is essential for him to prepare his defense.[4]

---

[4] The parties have not discussed such modifications because Beazer moved to quash the subpoena before seeking any. But the parties might consider, for example, an arrangement in which contents of emails alleged to be privileged are redacted, leaving only the unprivileged sender/recipient and date/time information (as in a privilege log). *See, e.g.*, *In re Grand Jury Proceedings*, 33 F.3d 342 (4th Cir. 1994) (requiring production of subpoenaed documents after redaction of privileged information).

6

### B. Subpoena to Beazer for records pertaining to certain bonds ("Beazer Subpoena 2") (Doc. 317-2)

The second subpoena seeks spreadsheets and related correspondence pertaining to bond status for a circumscribed set of geographic divisions during a limited, two-year period. Beazer Subpoena 2, Attach. A, ¶¶ 1-2. The requested bond status spreadsheets are directly relevant to allegations that Mr. Rand conspired to falsify or manipulate Beazer's reserve accounts; as the Court is aware, the proper accounting treatment of Beazer's reserve accounts depended in part on the bond status of the properties at issue. Thus, the bond status spreadsheets, which contain detailed bond status information (*see* Rodriguez Decl. ¶¶ 10-11, 18, Doc. 189), are material. Indeed, Mr. Rand has argued (*e.g.*, Doc. No. 240, at 1-2) that the bond spreadsheets directly undermine the testimony of a key government witness, Marilyn Andrea, who claimed that certain subdivisions were "off bond" (and thus related reserves should have been released) when the spreadsheets show otherwise. *See* Tr. 1368:2-4, 1370:17-23.

The requested bond status spreadsheets and related correspondence are identified with the requisite specificity. In each case, the request is limited to particular geographic subdivisions and specific types of documents. The Court's prior denial of leave for a pre-trial subpoena for other band status documents (Doc. 242) does not suggest otherwise, contrary to Beazer's suggestion (at 9-10). The Court noted that the documents sought for that pre-trial production covered "periods of up to ten years," but the current subpoena is targeted to just two fiscal years at the heart of this case.

7

The third and fourth categories of documents sought are also specific and reasonable. Mr. Rand seeks the production of particular documents that are identified by date and file format. *See* Beazer Subpoena 2, Attach. A, ¶ 3 (single spreadsheet in native format on bonds dated October 10, 2006, the non-native version of which was attached as an exhibit to subpoena); *id.* ¶ 4 (native versions of three specific documents used by the prosecution at trial, also attached in non-native format as exhibits to subpoena).

Beazer fails to explain how producing a small number of native-format documents could possibly be "unduly burdensome." Doc. 317, at 10. And its contention that they are not relevant to Mr. Rand's defense is clearly mistaken. The bond spreadsheet contains data on when bonds were exonerated, which pertains directly to whether the single largest reserve adjustment in this case was appropriate. However, this document is unusable in its non-native format—that is, when viewed as a PDF document of individual pages, rather than a spreadsheet. The non-native format version contains 1,700 pages with each row split across 23 separate pages; reading a single row continuously would require lining 23 pages up next to each other. Moreover, the native versions of the requested EPS Sensitivity Analyses contain metadata that will show when they were made and how certain numbers were calculated, which bears upon whether they were used for the purposes the government alleges.

The documents identified in the final request in the second subpoena—all versions of a *single* memorandum regarding accounting for sale-leasebacks—are material because they bear directly on the development within Beazer of the final version of the

8

memorandum and Mr. Rand's state of mind at the time. Ms. Haertel testified on cross-examination that she could not recall whether Mr. Rand had inserted the word "contractually" into the memorandum—an evidentiary gap the draft versions sought should help to fill. *See* Tr. 1877:10-1878:12.

## C. Subpoena for financial certifications, transcripts, and Beazer subpoena compliance ("Beazer Subpoena 3") (Doc. 317-3)

The third subpoena seeks three discrete categories of records: quarterly financial certifications by named Beazer employees during a specified timeframe; transcripts of Beazer earnings calls that Beazer has not previously produced; and emails and cover letters Beazer produced to the government in response to two subpoenas, limited to emails sent by, sent to, or copied to Mr. Rand.

The financial certifications will show that key government witnesses certified that they were unaware of any fraud, ethical violations, or internal controls weaknesses during the same time that Mr. Rand allegedly engaged in improper accounting. They hardly could be more relevant. The Court admitted such certifications at Mr. Rand's first trial. *See, e.g.*, Tr. 1070:14–1071:5 (certification used with Mr. O'Connor on cross examination); Tr. 1323:21–1326:15 (same with Mr. Tseng).

As to the financial certifications and transcripts (Beazer Subpoena 3, Attach. A, ¶¶ 1-3), Beazer does not argue that the request is insufficiently specific or that Beazer would have any difficulty locating the records at issue. Its sole objections (at 11) are that the request is "unduly burdensome" and that it "has nothing to do with Rand's conduct."

9

The former assertion is unfounded. Beazer does not explain why it would be burdensome for Beazer to produce *quarterly* certifications for specific Beazer employees and former employees for specific years, as well as transcripts that already exist. The universe of requested records is small and identifiable.

Beazer also seeks to quash the requests for emails sent to or from Mr. Rand that Beazer produced to the government in response to the March 23, 2007 grand jury subpoena (Beazer Subpoena 3, Attach. A, ¶ 4), as well as any cover letters to the government referencing those emails (*id.* ¶ 5), or any similar emails and cover letters produced to the government in response to the July 28, 2008 grand jury subpoena (*id.* ¶ 6). In each case, Mr. Rand seeks a narrow category of documents (emails) limited to a single email sender/recipient (Mr. Rand himself) and only if Beazer has *already* produced those emails to the government. Beazer does not argue that the requested emails are insufficiently specific; nor does it argue that they would be irrelevant or inadmissible.[5]

---

[5] By contrast, Beazer does argue (at 12) that the cover letters requested would be irrelevant—which is wrong. There is a sufficient likelihood that the cover letters contain relevant and admissible evidence. Earlier, in the context of Mr. Rand's motion to compel the *government* to produce the cover letters, this Court reasoned that "interpretations by Beazer's outside counsel are [not] relevant to [Mr. Rand's] own intent." Doc. 243, at 2. Mr. Rand respectfully disagrees; his objections to that order remain pending before Judge Conrad. *See* Doc. 250 (Defendant's objections). In any event, Mr. Rand's state of mind is not the only disputed issue of fact to which these cover letters may be relevant. At the first trial, the *government* called Mike Brown of Alston & Bird and examined him extensively on counsel's understanding of what the grand jury subpoena required, including specifically whether certain deleted emails were responsive to the subpoena. Tr. 528-531. Evidence that Mr. Rand may seek to present on that very same issue would be relevant to rebut the government's case. At the least, the cover letters will be relevant and admissible for impeachment purposes when Mr. Brown testifies again.

Its only objection (at 11) is that Mr. Rand may have "otherwise received the emails" from the government. It is irrelevant whether any of these emails were otherwise received from the government: The question is whether *Beazer* produced these emails to the government in response to the grand jury's subpoena—that issue goes to the heart of the government's obstruction case and whether or not Mr. Rand's actions actually obstructed anything. Beazer's production of the emails is relevant to, among other things, the reasonableness of Mr. Rand's belief that that emails he is alleged to have deleted were not responsive to that subpoena. This request is not duplicative of any prior motion by Mr. Rand since this is the first time Mr. Rand has sought a subpoena for Beazer concerning these records.

### D. Subpoena for O'Connor documents ("Beazer Subpoena 4") (Doc. 317-4)

The fourth challenged subpoena is narrowly drawn to communications concerning a specified set of topics—"bonuses, incentive compensation, or separation payments"—for an identified former Beazer employee, Richard O'Connor. The subpoena seeks documents from a limited timeframe of 2007 through 2012. Beazer Subpoena 3, Attach. A, ¶ 1. Other than a generalized cry of "fishing expedition" (at 12), Beazer does not develop any argument for why the subpoena is not sufficiently specific, or why the documents themselves would be irrelevant or inadmissible. To the contrary, the

11

documents are directly relevant to whether Mr. O'Connor has a motive to continue to cooperate with the federal investigation of Beazer.[6]

### E. Subpoena to Alston & Bird for interview notes and memoranda from investigation of Beazer ("Alston Subpoena") (Doc. 317-6)

Beazer does not contend that the requested documents in the Alston Subpoena are insufficiently specified, or that they are irrelevant or inadmissible. Beazer's only argument addressed to the Alston Subpoena is that the materials requested are privileged "and/or" confidential. Doc. 317, at 9. This response fails for the same three reasons its claim of privilege with respect to emails of Ms. Danzig fails. *First*, "[t]he burden is on the proponent of the attorney-client privilege to demonstrate its applicability." *Jones*, 696 F.2d at 1072. And Beazer does not even attempt to satisfy the conditions for the applicability of the privilege with respect to *any* document subject to the subpoena.

*Second*, any privilege or work-product protection over the documents has long since been waived. *See, e.g.*, *Martin Marietta Corp.*, 856 F.2d at 623. Beazer and Alston have repeatedly shared the results of Alston's investigation with the U.S. Attorney's

---

[6] For similar reasons, Beazer's correspondence with the United States Attorney's Office concerning Mr. O'Connor (Beazer Subpoena 3, Attach. A, ¶ 2) is also likely to contain relevant and admissible evidence bearing on Mr. O'Connor's credibility and bias. And Beazer misconstrues the Court's prior order respecting such cover letters, in suggesting (at 3) that the Court ever held that "whatever Beazer relayed to the government in cover letters … is not relevant to Rand's defense unless it contains *Brady* material." The actual order merely noted that the government had represented that it had complied with its *Brady* obligations under the Standard Criminal Discovery Order. Doc. 243, at 2-3 (Cayer, M.J.); *see also* supra n.5 (explaining that objections to the prior order remain pending before Judge Conrad). If it were true that materials sought by Rule 17(c) are only relevant if they satisfy the *Brady* standard, Rule 17(c) subpoenas to the government would be superfluous. Beazer offers no authority for that unsound position.

12

Office and the U.S. Securities and Exchange Commission. In a 2008 memorandum to the SEC, Beazer's counsel acknowledged that "Alston has presented its findings on multiple occasions to government agencies," including the SEC, DOJ, and FBI. Cahill Gordon & Reindel LLP Memorandum at 7, *In the Matter of Beazer Homes USA, Inc.* (A-3025) (attached as Ex. B) ("Cahill Memorandum"). In addition, an SEC Staff Accountant has met with Alston to review the contents of the interview memoranda. Alston has also specifically addressed "follow-up questions concerning Alston's interviews." Cahill Memorandum at 8. And Beazer and Alston disclosed the contents of the interview memoranda to Beazer's auditor, Deloitte, which summarized the contents and then produced those summaries to the government in April 2010. *See* DT-R-000562-593 (Deloitte summaries, attached as Ex. C). By sharing the contents with the government, Beazer waived any privilege or work product protection. *See Martin Marietta Corp.*, 856 F.2d at 622 (rejecting "concept of limited waiver of the attorney-client privilege" and holding that disclosure to government constituted waiver); *In re Mutual Funds Investment Litig.*, 251 F.R.D. 185, 187-188 (D. Md. 2008) (same, even where disclosure to government was confidential).[7]

---

[7] Beazer's attempt to quash subpoenas issued to Navigant and Alston & Bird, as third parties, should be denied on standing grounds. *See, e.g.*, *United States v. Marabini*, 2006 WL 3921906, at *7 (S.D. Fla. Dec. 28, 2006) (denying motion to quash because movant "is not a party to these proceedings and … is not the person served with the subpoena" and "[t]herefore … lacks standing"); 9 Moore, *Moore's Federal Practice—Civil* ¶ 45.50[3] (3d ed. rev. 2014) ("When a subpoena is directed to a nonparty, any motion to quash or modify the subpoena generally must be brought by the nonparty."). Although a claim of privilege may confer standing in such circumstances, *see, e.g.*, *In re Grand Jury*,

*Third*, if Beazer nonetheless believes that it has any valid privilege in responsive documents, the remedy is to produce a privilege log that sets forth a basis for that claim. Quashing the Alston Subpoena in its entirety based on unsupported assertions of a blanket privilege is not the appropriate remedy.

### F. Subpoena to Navigant Consulting for documents relating to alleged email deletions ("Navigant Subpoena") (Doc. 317-7)

The final subpoena *duces tecum* that Beazer challenges seeks documents from Navigant Consulting. Beazer again alludes to privilege and confidentiality concerns (at 6, 9), but those assertions fails for the reasons explained above: Beazer has not even attempted to carry its burden of establishing any privilege attaches to any responsive document; it has waived any such privilege through its disclosures to the government; and the remedy is for Beazer to produce a privilege log, not to quash the whole subpoena.

In addition to privilege objections, Beazer makes perfunctory arguments (at 9) about relevance with respect to the Navigant Subpoena. But Beazer has no possible standing to make objections about relevance or burden—those objections belong only to Navigant. *See supra* n.7. In any event, the arguments are wrong: evidence about the findings and deficiencies of Navigant's forensic investigation of alleged email deletions (the subject of one count in the Indictment) will clearly be relevant. Notes and

---

111 F.3d 1066, 1073-1074 (3d Cir. 1997), the movant "must offer more than 'vague legal conclusions and speculat[ions]' about the existence of a threatened personal privilege," *United States v. Gordon*, 247 F.R.D. 509, 510 (E.D.N.C. 2007). Beazer does not do so here for the reasons explained in the text.

14

memoranda detailing Navigant's investigation and the timing of any alleged deletions are undoubtedly relevant to rebutting the government's email deletion case.[8]

### G. The Subpoena For Testimony At Trial By A Beazer Employee Is Also Reasonable ("Beazer Subpoena 5") (Doc. 317-5)

Lastly, Beazer seeks to quash Mr. Rand's subpoena to compel the presence at trial of a Beazer employee to authenticate Beazer's own business records—specific records that are identified by bates stamp in an attachment to the subpoena. Beazer Subpoena 5, Attach. A (Doc. 317-5). The motion to quash should be denied for several reasons.

*First*, as with its motion generally, Beazer's request is wholly premature, before any negotiation between the parties and well before the need for any testimony from a Beazer employee. Negotiations should address any Beazer concerns about burden.

*Second*, the subpoena is a back-up request only if Beazer refuses to produce a business records certification pursuant to Fed. R. Evid. 902(11). Mr. Rand previously requested such a certification from Beazer. That certification would obviate the need for a records custodian, and help alleviate the burden on the Court and jury by reducing the number of witnesses needed at trial. Since the records originated *from Beazer,* this request should have been unobjectionable. Surprisingly, Beazer has refused to provide the certification, forcing Mr. Rand to serve the subpoena in question for a records

---

[8] Furthermore, the specific journal entry materials sought from Navigant in Attachment A, ¶ 4 are relevant to understanding how the prosecution has gone about selecting, or cherry-picking, specific journal entries for use in its prosecution. The request is not an "end run" around the Court's prior order on access to records from *Beazer's* JD Edwards system (Doc. 317, at 9) because, among other things, the subpoena seeks (i) much a narrower set records (ii) that *Navigant* prepared during its investigation.

15

custodian. Thus Beazer is both *refusing* to provide a business records certification for its *own records*, and *refusing* to provide a records custodian to authenticate them.[9]

*Third*, it is routine, not unreasonable or oppressive, to compel a witness to provide such testimony. The custodian does not necessarily need to be familiar with the underlying records but rather with the regularity of the business practices by which the records were generated, *see* Fed. R. Evid. 803(6), and their authenticity. *See, e.g.*, 2 Broun, *McCormick on Evidence* § 292 (7th ed. 2013) ("Any witness with the necessary knowledge about the particular recordkeeping practice could testify[.]"). And the documents for which custodial testimony may be necessary are identified specifically in the subpoena. Although there may be a large volume of documents, the documents are easily divided into a modest number of discrete categories to which a witness could testify. The subpoena requests authentication of *three* categories of investor relations documents: earnings call transcripts, 10-Q/10-K/8-K filings, and news releases. It requests authentication of *seven* categories of accounting reports: internal audit reports, lot profit reports, metrics files, management packs, budget packs, land acquisition tracker schedules, and variance reports. Finally, it requests authentication of just *three* more

---

[9] This recalcitrant behavior by Beazer toward the Rand defense should be contrasted to the steady flow of information provided by Beazer to the U.S. Attorney's Office upon request. *See, e.g.*, Doc. No. 309-1 at 2-4 (detailing Beazer's recent production of additional, cherry-picked journal entries from Beazer's accounting system in response to several government requests); *see also* Deferred Prosecution Agreement ¶ 5(b), *United States v. Beazer Homes USA, Inc.*, 09-cr-113 (Doc. No. 2) (July 1, 2009) (granting government a right to "all non-privileged documents [and] records" for any investigatory or prosecutorial purpose); *see also* GX612 (copy of the agreement).

16

individual documents: a bond tracking sheet, a schedule of reserve analyses, and a spreadsheet of accounting data.

\* \* \*

Beazer's motion to quash seven subpoenas in their entirety before any negotiation between the parties occurred is decidedly premature.  It should be denied without prejudice while the parties negotiate in good faith.  Otherwise, it should be denied with prejudice with respect to each challenged subpoena.

Respectfully submitted, this 20th day of June, 2014.

| WOMBLE CARLYLE SANDRIDGE AND RICE LLP | WILMER CUTLER PICKERING HALE AND DORR LLP |
|---|---|
| *s/ Claire J. Rauscher*<br>Claire J. Rauscher<br>North Carolina Bar No. 21500<br>One Wells Fargo Center<br>301 South College Street, Suite 3500<br>Charlotte, NC 28202<br>Telephone:  (704) 331-4961<br>Facsimile:  (704) 338-7811 | *s/ Brent J. Gurney*<br>Brent J. Gurney<br>DC Bar No. 408377<br>Jeannie S. Rhee<br>DC Bar No. 464127<br>1875 Pennsylvania Avenue, NW<br>Washington, DC  20006<br>Telephone:  (202) 663-6000<br>Facsimile:  (202) 663-6363 |
| | **ROGERS & HARDIN LLP**<br>*s/ Stephen D. Councill*<br>Stephen D. Councill, Esq.<br>Georgia Bar No. 190358<br>Joshua P. Gunnemann, Esq.<br>Georgia Bar No. 152250<br>229 Peachtree Street NE<br>2700 International Tower<br>Atlanta, GA  30303<br>Telephone:  (404) 522-4700<br>Facsimile:  (404) 525-2224 |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:10-CR-182 |
| ) | |
| MICHAEL T. RAND, ) | |
| ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the within and foregoing DEFENDANT'S RESPONSE IN OPPOSITION TO NON-PARTY BEAZER HOME USA, INC.'S MOTION TO QUASH RULE 17 SUBPOENAS with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record.

This 20th day of June, 2014.

*s/ Brent J. Gurney*
Brent J. Gurney
DC Bar No. 408377
*Counsel for Defendant Michael T. Rand*
**WILMER CUTLER PICKERING
 HALE AND DORR LLP**
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

18